**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS SPERLING individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>HYUNDAI MOTOR AMERICA,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

COMPLAINT – JURY TRIAL DEMANDED

## **NATURE OF THE ACTION**

1.      Many automatic driving and safety features found in new cars today are the first steps toward fully autonomous cars.  Automatic emergency braking ("AEB") is one of those features.  Broadly speaking, AEB systems work by scanning the road for other vehicles, pedestrians, and objects and automatically applying the brakes if there is a threat of collision.  No car manufacturer wants to be left behind its competition when it comes to providing automated features like AEB.  Manufacturers comprising "more than 99% of the U.S. automobile market" voluntarily committed to outfitting "every new passenger vehicle with [AEB] by Sept. 1, 2022."[1]  While there is nothing inherently wrong with the inclusion of AEB technology in new car models, the problem is that some car manufacturers like Hyundai rushed this feature to market and used cheap radar and associated components that are not up to the task they are required to perform.  That is what this case is about.

2.      The Hyundai AEB systems at issue here have a defect that causes them to falsely engage randomly, causing sudden, unintended braking (the "Sudden Unintended Braking Defect").  The Sudden Unintended Braking Defect causes the Class Vehicles to detect non-existent obstacles, which then automatically triggers the brakes and causes the Class Vehicles to abruptly slow down or come to a complete stop, sometimes in the middle of traffic.  The same defect can distract and alarm drivers with sudden, blaring visual and audible alerts when there are no obstacles on the road, which likewise creates a safety hazard even if the brakes do not automatically activate.  Simply put, as a result of the Sudden Unintended Braking Defect, Hyundai's AEB systems are a safety hazard, not a safety feature.

---

[1] https://www.iihs.org/news/detail/10-automakers-equipped-most-of-their-2018-vehicles-with-automatic-emergency-braking

COMPLAINT – JURY TRIAL DEMANDED

3.      This case involves all 2025 MY Hyundai Tucson vehicles equipped with an AEB system ("the Class Vehicles").  Hyundai and the National Highway Traffic Safety Administration have received numerous complaints about sudden unintended braking in the Class Vehicles.  These incidents would have come as no surprise to Hyundai, because it was fully aware that the AEB systems installed in the Class Vehicles were prone to sudden unintended braking when it first put the Class Vehicles on the market.

## PARTIES

4.      Plaintiff Dennis Sperling is domiciled in California and may be referred to later in this complaint as a "California Plaintiff."  He owns a 2025 Hyundai Tucson equipped with Hyundai's AEB system, which he purchased in California from an authorized dealer.  Before his purchase, Mr. Sperling was never informed about the sudden, unintended braking defect.  He would not have purchased the car or would not have purchased it on the same terms if he had known about the defect.  Mr. Sperling has experienced the braking defect in his vehicle numerous times.

5.      Plaintiff intends to buy or lease new vehicles again in the future and wants to purchase or lease another Hyundai vehicle, but he is concerned that Hyundai would again conceal a known defect affecting that system.  An injunction requiring Hyundai to take remedial steps with respect to the Sudden Unintended Braking Defect would therefore benefit Plaintiff.  Further, an injunction would benefit Plaintiff in the future as he possesses his vehicle, and would help alleviate the current danger that the Defect poses to Plaintiff whenever he operates his vehicle.

6.      Defendant Hyundai Motor America, is a California corporation with its headquarters and principal place of business in Fountain Valley, California.

COMPLAINT – JURY TRIAL DEMANDED                                                         2

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

8.     This Court has personal jurisdiction over Defendant because it conducts substantial business and is headquartered in California.  A substantial portion of the events giving rise to the claims alleged here occurred in this state.

9.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

10.     At issue in this case are the 2025 Hyundai Tucson vehicles sold in the United States and equipped with an AEB system.  These are collectively referred to in this complaint as "Class Vehicles."

11.     The AEB systems in the Class Vehicles (described in more detail below) are all the same or substantially similar in all material respects.  They used the same or substantially the same components, and received the same or substantially the same software updates.  They all suffer from the same Sudden Unintended Braking Defect at issue in this case.  The cause of the defect is the same for all Class Vehicles and available countermeasures, if any, are the same.

***Background on AEB Systems:***

12.     AEB systems have become a standard feature in most cars made today.  Typically, they include one or more front-facing radar or lidar sensors, which may be paired with a front-facing camera positioned in front of the rear-view mirror.  These components work together to scan the road ahead, attempting to identify potential obstacles that could cause a collision.  If an obstacle is

COMPLAINT – JURY TRIAL DEMANDED                                          3

detected, the system will alert the driver and potentially apply light or strong brakes automatically.

13.  The technology is new, expensive, and not fully developed by many car manufacturers like Hyundai.  To work correctly, the components and related software must perform complex analyses instantaneously, and do so in a package that is as small and lightweight as possible.  As NHTSA has explained, the safety and reliability of AEB systems "depend[] heavily on the accuracy and timeliness of detection, which relies on the *quality of the installed sensor, camera, or vision algorithm detecting targets*."  However, only a small handful of companies make the sensors and other components used for AEB systems, and many of the components they offer are simply not up to the task demanded of them.

14.  In addition, car manufacturers face two, related business pressures when it comes to AEB systems.  First, car manufacturers were in a years-long race to get AEB systems on the market, and to make them standard features in most cars by 2022.  At the same time, car manufacturers face strong temptation to use cheaper components, even if they are less reliable.  Choosing a $60 radar over a $100 radar, for example, can save a manufacturer many millions of dollars.  Cutting corners on AEB systems by installing unreliable components that are not capable of reliably performing the complex procedures asked of them, however, makes them unsafe.   The result is that some car manufacturers' AEB systems are reasonably reliable and safe, but others, like Hyundai's AEB system at issue here, are not.

### *Hyundai's AEB System and the Sudden Unintended Braking Defect:*

15.  Hyundai calls its proprietary AEB system "Forward Collision-Avoidance Assist with Pedestrian, Cyclist, and Junction Turning Detection." ("FCA-JT").  According to Hyundai, "[w]hen the system detects a vehicle or pedestrian ahead, it warns you of a potential collision.  If you don't begin stopping in time, the system may automatically apply braking.  In addition, the FCA system

---

COMPLAINT – JURY TRIAL DEMANDED                                                      4

can also apply brakes when turning left at an intersection when risk of a collision with an oncoming vehicle is detected."

16. Thus, like other AEB systems, if Hyundai's FCA-JT system detects an obstacle on the road, it is intended to provide a visual and audible alert to the driver, and then if the driver takes no action, automatically apply the brakes. In practice, however, the visual and audio alerts often happen simultaneously with the automatic braking.

17. The AEB system used in the Class Vehicles is highly prone to sudden, unintended braking when there are no obstacles in the road, often referred to in the industry as "false activation." Similarly, the same defect can distract and alarm drivers with sudden, blaring visual and audible alerts when there is no obstacles in the road, which likewise creates a safety hazard even if the brakes do not automatically activate.

18. Since the Class Vehicles were first put on the market, Hyundai and NHTSA have received dozens of complaints about false activations, including three incidents that resulted in crashes and/or fires, and two injuries.

19. Hyundai was also aware of all customer complaints that were sent to NHTSA. All safety complaints made to NHTSA are transmitted or made available to Hyundai, who monitors them as part of Hyundai's online reputation management efforts and/or to identify potential defects in its vehicles. Monitoring complaints to NHTSA is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Hyundai adheres to that practice.

20. A few examples of customer complaints are quoted below. There were many more complaints than those that are quoted here:

**NHTSA ID Number: 11711728**

**Incident Date: January 18, 2026**

*The emergency breaking system automatically engages whenever it feels it wants to. It has become extremely dangerous to drive the vehicle on a daily basis. I have been in contact with Hyundai, Hyundai consumer affairs and have brought the vehicle back to two dealerships to see if they can duplicate the problem. They have been incredulous thus far and still I am left with the safety issue. I feel very scared to drive the vehicle. I am not sure what to do at this point because Hyundai said if they can't duplicate the problem then the vehicle is working as designed but is it going to take a serious accident for this to be taken seriously. It has been happening since September 2025. Thank you*

**NHTSA ID Number: 11710675**

**Incident Date: January 13, 2026**

*The Automatic Emergency Braking system, I think it may be called (or is a part of) the Forward Collision Avoidance system by Hyundai, triggered incorrectly while on Interstate 265. My car was travelling at about 35 MPH on the off ramp when the Automatic Emergency Braking system triggered and cause my car to rapidly decelerate to a near standstill. The vehicle following behind me had to swerve into another lane to avoid hitting my car. The problem has not been reproduced or confirmed by a dealer or service center. The component has not been inspected yet, but we will be bringing it to the dealer in the near future. There were not warnings or messages that this was about to happen other than the emergency sound and light when the Automated Emergency Braking engaged. This has happened twice before on other roads and in other situations with this car.*

**NHTSA ID Number: 11707526**

**Incident Date: December 16, 2025**

*The automatic brake system triggers when there is no obstacle. It has caused the car to stop suddenly in the middle of the road and almost become rear ended several times. We took it to the Hyundai service center and they said they've had complaints of this before but checked the system and don't see any issues.*

**NHTSA ID Number: 11700246**

**Incident Date: November 1, 2025**

*Forward collision alert system has slammed the breaks on for no reason. The vehicle begins abruptly stop for no reason. On two of the occasions I was almost rear-end by following vehicles. The system needs to be recalled.*

**NHTSA ID Number: 11697218**

**Incident Date: November 1, 2025**

*Multiple times my vehicle has come to a complete stop unwarranted. There have been multiple instances of the automatic braking triggering on Michigan left hand turns with no traffic oncoming. This was reported to the dealer and they found no issue, however it has happened again since. The vehicle has also multiple times come to a full stop in heavy traffic when I was already braking and a full stop was unnecessary. There were two instances from this where I was very nearly rear ended, including on the expressway. There were no warnings that the system was malfunctioning.*

**NHTSA ID Number: 11688738**

**Incident Date: September 19, 2025**

*Forward collision warning automatic braking caused car behind me to rear-end me. This is the first accident but third time the automatic braking unnecessarily caused an issue. The car in front of me was far enough away that it did not require an auto-brake.*

**NHTSA ID Number: 11684030**

**Incident Date: August 29, 2025**

*4th occurrence of the forward assistance warning system activating when we were at a slow speed with plenty of room to stop and the brakes engaged suddenly to stop the car and today someone slammed into the rear of our car. This is extremely frightening and should never happen at slow speeds when there is ample time to stop. My husband doesn't even want to drive this car again as he's afraid we may be killed. I see on the reddit site that this is happening to others too. Hyundai must fix this issue ASAP. You can temporarily stop this from working but everytime you stop & turn off car you must do it again. Police were called & report filed. We have to get our car fixed now.*

**NHTSA ID Number: 11671899**

**Incident Date: June 12, 2025**

*Car slams on the brakes while under controlled stopping. This has happened on a few occasions. Reported it to the dealer service department and was told it has happened to them and suggested that I turn off that option.*

21.     The causes of the Sudden Unintended Braking Defect are the same for all of the Class Vehicles: namely, Hyundai's FCA-JT system is technologically underdeveloped and relies on cheap sensor and data processing components that

are unable to reliably perform the one job they are intended to do: namely, adequately differentiate common road features with true obstacles that warrant braking activation.

22.   Hyundai is currently investigating the Sudden Unintended Braking Defect in the Class Vehicles and treats it as a collective problem with a common root.

### Hyundai Knew About The Sudden Unintended Braking Defect When It First Put The Class Vehicles On The Market

23.   The complaints about false activations in the Class Vehicles would not have come as a surprise to Hyundai.  To the contrary, Hyundai would have anticipated that it would receive complaints because it knew about the Sudden Unintended Braking Defect before it put the Class Vehicles on the market.

24.   In March 2016, Hyundai and its competitors in the U.S. market jointly agreed to equip most light vehicles with AEB systems by September 2022. Despite supporting the plan, however, automakers knew that the timeline was aggressive, and that the technology was not yet up to the task.

25.   By 2025, it was widely known in the industry—but generally not among consumers—that using cheap and inadequate components creates greater risk of object detection problems that lead to false activations and abrupt braking where no potential collision is imminent. Common roadside features like metal guardrails or overhead structures continue to confound some manufacturers' systems, including Hyundai's AEB system.  Installing more costly and effective sensors and data processing components was one available option for reducing false activations—but that was not an option Hyundai was willing to try.

26.   In particular, when Hyundai first placed the Class Vehicles on the market, Hyundai knew that cheaper and unreliable components it installed in the Class Vehicles' AEB system were not capable of performing reliably as intended.

COMPLAINT – JURY TRIAL DEMANDED                                        9

27.    Hyundai also would have known about the high risk of false activations as a result of pre-release testing, which includes driving the vehicles for many miles and under many different road conditions.  Importantly, Hyundai knew from past experience that certain common road conditions are often associated with false activations, like railroad tracks, metal guardrails, sidewalk postboxes, metal bridges, and parking lots.  Based on past experience and industry knowledge, Hyundai's testing would have included driving near such road conditions to determine whether false activations were a problem.  And when it comes to the Class Vehicles, they *are* in fact a problem.

28.    Once sales of a vehicle model begin, Hyundai monitors a variety of sources of information to detect signs of defects.  These sources of information include warranty claim data, customer complaints to Hyundai, complaints to NHTSA, replacement part data, and field reports.  Hyundai knows that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Hyundai makes projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

29.    The number of complaints for all MY Class Vehicles was unusually high relative to the total population of vehicles sold or leased.  The fact that so many drivers made similar complaints so quickly after the vehicles were introduced into the market indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Class Vehicles.  The reports and complaints from drivers were similar enough to put Hyundai on notice that the incidents described were the result of a defect, and that the Class Vehicles were experiencing unusually high levels of complaints about the AEB Systems.

30.    Hyundai's pre-sale knowledge of the Sudden Unintended Braking Defect is also evidenced by admissions in the owner's manuals for each Class

COMPLAINT – JURY TRIAL DEMANDED                                                      10

Vehicle. Hyundai acknowledged the Sudden Unintended Braking Defect in the small print buried in the owner's manuals of each of the Class Vehicles.

31.    The disclosures are found on approximately page 350 of a manual that is over 600 pages long.

32.    Specifically, each of the owner's manuals states that the system "may not operate properly, or it may operate unexpectedly" in certain circumstances such as:

- The temperature around the front view camera is high or low due to surrounding environment
- Street light or light from an oncoming traffic is reflected on the wet road surface, such as a puddle on the road
- Only part of the vehicle, powered two-wheeler, pedestrian or cyclist is detected
- The vehicle or powered two-wheeler in front is a bus, heavy truck, truck with an unusually shaped cargo, trailer, etc.
- The rear of the front vehicle is small or the vehicle does not look normal, such as when the vehicle is tilted, overturned, or the side of the vehicle is visible, etc.
- The front vehicle's ground clearance is low or high
- The temperature around the front radar is high or low
- Driving through a tunnel or iron bridge
- Driving in vast areas where there are few vehicles or structures (for example, desert, meadow, suburb, etc.)
- Driving near areas containing metal substances, such as a construction zone, railroad, etc.
- A material is near that reflects very well on the front radar, such as a guardrail, nearby vehicle, etc.
- The cyclist in front is on a bicycle made of material that does not reflect on the front radar
- The vehicle or powered two-wheeler in front is detected late
- The vehicle or powered two-wheeler in front suddenly changes lane or suddenly reduces speed
- The vehicle or powered two-wheeler in front is bent out of shape

COMPLAINT – JURY TRIAL DEMANDED                                                  11

- The vehicle in front is covered with snow
- You are departing or returning to the lane
- You are on a roundabout and the vehicle or powered two-wheeler in front is not detected
- You are continuously driving in a circle
- The vehicle in front has an unusual shape
- The vehicle in front is driving uphill or downhill

33.    These are all commonplace road conditions that drivers experience multiple times a day.

34.    Moreover, a vague statement that the system "may not operate properly" downplays the potential severity and consequences of sudden unintended braking when the car is driving at a high rate of speed. The statement does not sufficiently give notice of what a failure to "operate properly" would actually entail.

35.    Hyundai also knows that car purchasers do not typically review the manual's fine print before purchasing their car.

36.    Notwithstanding the AEB Systems being touted as a safety feature, Hyundai never referenced or otherwise directed potential purchasers to this hidden disclaimer.  The Sudden Unintended Braking Defect was never disclosed on Hyundai's website.  It was never disclosed on Monroney labels.  It was never disclosed in television or internet advertisements.  It was never disclosed in sales brochures offered by dealers.  Hyundai never advised dealers to disclose the defect.  At best, Class members would only see the disclosure in the owner's manuals *after* they purchased or leased the vehicles and if they happened to stumble upon it when reading the owner's manual.

37.    Nor do the disclosures say anything about the potential severity of the problem, or how hard the braking may occur.  There is no warning that false activations may increase the risk of a rear-end collision.

COMPLAINT – JURY TRIAL DEMANDED                                                    12

38. In short, although the disclosures described in the owner's manuals did nothing to adequately warn people about the Sudden Unintended Braking Defect, the fact that Hyundai alluded to the AEB systems' propensity for false activations demonstrates it knew about the defect before Hyundai began marketing and selling the Class Vehicles with the AEB systems.

***Hyundai Had A Duty To Adequately Disclose The Sudden Unintended Braking Defect***

39. Hyundai had – and continues to have – a duty to fully disclose the true nature of the Sudden Unintended Braking Defect to Class Vehicle owners, because the defect poses an unreasonable safety hazard; because Hyundai had and continues to have exclusive knowledge or access to material facts about the Class Vehicles' AEB systems that were and are not known to or reasonably discoverable by class members; and because Hyundai actively concealed the defect from its customers at the time of purchase or repair and thereafter.

40. Hyundai also had a duty to disclose because it made and continues to make partial representations about the AEB systems on Monroney window stickers, which are affixed to the window of every Class Vehicle at the time of sale, and which uniformly tout its AEB system as a "safety" feature without disclosing the hazards caused by the Sudden Unintended Braking Defect.

41. Before his purchase, Plaintiff relied on information about the cars that did not disclose the Sudden Unintended Braking Defect, including the window stickers, Hyundai's website, brochures, advertisements, and YouTube and other social media channels. Plaintiff became aware of the defect only after purchasing or leasing their respective vehicle, and did so within the applicable statute of limitations.

42. Plaintiff also would have been aware of the defect had Hyundai disclosed it to its dealerships. Plaintiff interacted with and received information

from sales representatives at an authorized Hyundai dealership before purchasing his car.

43.    The failure to disclose the Sudden Unintended Braking Defect was a material omission.  Had the defect been disclosed, Plaintiff would have been aware of it and behaved differently – namely, by not purchasing the car or by paying less for it.

*Injunctive Relief*

44.    In addition to other relief, Plaintiff seeks the following injunctive relief, which aims at preventing injury to current and future drivers of Hyundai vehicles:

(a)    Requiring Hyundai to implement a service campaign to do one of the following remedial measures: (1) permanently deactivate the AEB system; or (2) replace the system with a suitable and safe alternative;

(b)    Requiring Hyundai to publicize the full extent of its knowledge about the Sudden Unintended Braking Defect on its website, sales brochures, social media channels, YouTube channel, mobile apps, print mailers, and dealership communications.

(c)    Reforming Hyundai's warranty to ensure that dealerships will repair the defect for free.

## CLASS ALLEGATIONS

45.    *Class Definition*: Plaintiff brings this action on behalf all people the following classes and subclasses:

Nationwide class: all people in the United States who purchased or leased a Class Vehicle.

California class: all people who purchased or leased a Class Vehicle in California.

46.    The foregoing class definitions are placeholders. Subject to further investigation and pursuant to Rule 23(c)(1)(C), they may be modified any time

COMPLAINT – JURY TRIAL DEMANDED                                    14

before final judgment, including through the use of multi-state subclasses to account for material differences in state law, if any.

47. Excluded from the putative classes are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

48. *Numerosity.* Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

49. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

    (a) Whether Hyundai knew or should have known of the Sudden Unintended Braking Defect, and if so, when it discovered the defect;

    (b) Whether knowledge of the Sudden Unintended Braking Defect would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard and impacts the central functionality of Class Vehicles;

    (c) Whether Hyundai failed to disclose and concealed the existence of the Sudden Unintended Braking Defect from potential customers;

(d)     Whether the Court may enter an injunction designed to reduce the risk of future harm to Plaintiff and class members;

(e)     Whether Hyundai's conduct, as alleged herein, violates the consumer protection laws asserted here;

50.     **Typicality.**  Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that its Product can be dangerous.

51.     **Adequacy**.  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff retained counsel who is highly experienced in complex consumer class action litigation, and Plaintiff will vigorously prosecute this action on behalf of the Class.  Plaintiff has no interests that are antagonistic to those of the Class.  Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

52.     **Superiority**.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

53.     Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

54.     Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

COMPLAINT – JURY TRIAL DEMANDED                                            16

## COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

55.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

56.     Plaintiff brings this cause of action individually and on behalf the nationwide class and state subclass.

57.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

58.     Defendant acted with knowledge and intent.

59.     Plaintiff alleges a claim under all three prongs of the UCL.

60.     As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

61.     Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

62.     Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

63.     As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

64.     Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate

COMPLAINT – JURY TRIAL DEMANDED                                                                17

remedy at law to address the unfair conduct at issue here.  Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

65.     Equitable relief is appropriate because Plaintifs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which they are entitled.

66.     Plaintiff seeks all relief available under the UCL.

## COUNT II
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

67.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

68.     Plaintiff brings this cause of action individually and on behalf the nationwide class and the state subclass.

69.     Defendant is a "person" as defined by California Civil Code

COMPLAINT – JURY TRIAL DEMANDED                                           18

§ 1761(c).

70.    Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

71.    For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

72.    Plaintiff provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

73.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

74.    Defendant acted with knowledge and intent.

75.    As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

76.    With respect to the CLRA claim, Plaintiff alleges in the alternative that they lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

77.    As a result of Defendant's misconduct, Plaintiff and other Class members have suffered monetary harm.

78.    Plaintiff seeks all available relief under this cause of action.

## COUNT III
### Violation of Song-Beverly Consumer Warranty Act
### for Breach of Implied Warranty, Cal. Civ. Code § 1790, *et seq.*

79.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

80.    The California Plaintiff brings this cause of action individually and on behalf the California subclass.

81.    Class Vehicles are "consumer goods" and Plaintiff and class members are "buyers" within the meaning of Cal. Civ. Code § 1791.

COMPLAINT – JURY TRIAL DEMANDED                                          19

82.    Hyundai is a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

83.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Hyundai warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

84.    The Class Vehicles would not pass without objection in the automotive trade because they contain the above-described Defect, which also makes them unfit for the ordinary purpose for which a Class Vehicle would be used.

85.    The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise the members of the proposed California Class of the existence of the danger prior to experiencing failure firsthand.

86.    Hyundai's actions have deprived Plaintiff and the members of the proposed California Class of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and other members of the proposed California Class paid.

87.    As a direct and proximate result of Hyundai's breach of implied warranty, members of the proposed California Class received goods whose condition substantially impairs their value. Plaintiff and members of the proposed California Class have been damaged by the diminished value of their Class Vehicles.

88.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and members of the proposed California Class are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Class Vehicles or the overpayment or diminution in value of their Class Vehicles. They

COMPLAINT – JURY TRIAL DEMANDED                                                    20

are also entitled to all incidental and consequential damages resulting from Hyundai's breach, as well as reasonable attorneys' fees and costs.

89.     Plaintiff seeks all available relief under this cause of action.

## COUNT VII
## Breach of Implied Warranty

90.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

91.     Plaintiff brings this cause of action individually and on behalf the nationwide class and state subclass.

92.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, impliedly warranted that they would pass without objection in trade under the contract description; was fit for the ordinary purpose for which the Class Vehicles would be used; and conformed to the promises or affirmations of fact made on the container or label.

93.     Defendant breached its warranty implied because the Class Vehicles could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the defect at issue; and they are unfit for their ordinary purpose.  As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

94.     Plaintiff and Members of the Classes purchased the Class Vehicles in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

95.     The Class Vehicles were defective when it left the exclusive control of Defendant.

96.     Plaintiff and class members did not receive the goods as warranted.

97.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and class members have been injured and harmed because: (a)

COMPLAINT – JURY TRIAL DEMANDED                                        21

they would not have purchased the products on the same terms if they knew that the Product was dangerous; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

98.     Plaintiff seeks all available relief under this cause of action.

## COUNT VIII
## Unjust Enrichment

99.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

100.    Plaintiff brings this cause of action individually and on behalf the nationwide class and state subclass.

101.    To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

102.    The unjust enrichment claims are premised on Hyundai's pre-sale activities and are unrelated to Hyundai's post-sale obligations to provide repairs.

103.    Plaintiff and the class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

104.    In addition, or alternatively, Plaintiff and the class members conferred a direct benefit on Defendant by essentially beta-testing Defendant's AEB technology under real-world driving conditions.  Given that Plaintiff would not have bought their respective cars if the defect had been disclosed, or would have paid less for their cars, there is a direct relationship between their detriment and Defendant's wrongful conduct.

105.    Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

106.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the Class Vehicles, which retention of such revenues under these circumstances is unjust and

COMPLAINT – JURY TRIAL DEMANDED                                            22

inequitable because Defendant omitted that the Product was dangerous.  This caused injuries to Plaintiff and Members of the Classes because they would not have purchased the Product or would have paid less for them if the true facts concerning the Product had been known.

107.   Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Class Vehicles to Plaintiff and the Class Members.

108.   Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

109.   Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Class Vehicles.

110.   As a direct and proximate result of Defendant's actions, Plaintiff and the Members of the Classes have suffered in an amount to be proven at trial.

111.   Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

112.   Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the classes alleged in this complaint, and naming Plaintiff as the representative of those classes;

b. For an order declaring Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and class members on all counts asserted herein;

d. For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and class members their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  February 23, 2026                          Respectfully submitted,

                                                   /s/   Joel D. Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street,
5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail:  joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey
(State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**FURIA LAW LLC**
Philip J. Furia
(Pro Hac Vice Forthcoming)
880 Third Avenue, 5th Floor
New York, New York 10022
Phone: 646-830-1915
E-Mail: furiap@furiafirm.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Joel D. Smith, declare as follows:

2.  I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

3.  I am the attorney for Plaintiff in the above-captioned action.

4.  I submit this declaration in support of the First Amended Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

5.  The Class Action Complaint has been filed in the proper place for trial of this action.

6.  It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on February 23, 2026 in Danielson, CT.

By:  /s/ Joel D. Smith
          Joel D. Smith

COMPLAINT – JURY TRIAL DEMANDED